IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

BRADWICK G. SIMMONS,

          Plaintiff,

v.                                   CIVIL ACTION NO. 3:24-0078

VILLAGE OF BARBOURSVILLE,
a West Virginia Municipality,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Village of Barboursville's Motion for Summary Judgment. ECF No. 56.[1] For the following reasons, the Court **GRANTS** the motion.

## I.    BACKGROUND

Plaintiff Bradwick Simmons served as a police officer for Defendant Village of Barboursville from 2009 until his termination on July 24, 2023. *Compl.* ¶ 4, ECF No. 1. Plaintiff alleges his termination "was due to reporting illegal and wrongful conduct by other members of the Village of Barboursville Police Department, including officers performing personal business while on duty

---

[1] In making its decision, the Court considered the following documents: Plaintiff's Complaint, ECF No. 1; Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Mot. for Summ. J."), ECF No. 57; Defendant's Exhibits ("Def.'s Ex."), ECF No. 58, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Resp. to Def.'s Mot. for Summ. J."), ECF No. 63; Defendant's Reply to Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment ("Def.'s Reply"), ECF No. 64; Plaintiff's Citations Regarding Officer Backus' Investigation, ECF No. 85; Defendant's Response in Opposition to Plaintiff's Citations Regarding Officer Backus' Investigation, ECF No. 86; Plaintiff's Reply Memorandum Regarding Officer Backus' Investigation ("Pl.'s Reply Mem. Regarding Officer Backus' Investigation"), ECF No. 87. The Court also considered argument on the motions by counsel at the August 25, 2025 pretrial conference.

being paid by Village of Barboursville." *Id.* ¶ 5. Plaintiff claims such termination violated the West Virginia Whistle-blower Law, W. Va. Code § 6C–1–3.[2] *Id.* ¶¶ 13–14. Defendant now seeks summary judgment.

In early January of 2023, Plaintiff met with Village of Barboursville Human Resources Generalist Lacey Connelly to file a grievance against fellow officer Sergeant Chris Staten. *Def.'s Ex. C*, E-mail from Pl. to Lacey Connelly (Jan. 17, 2023), ECF No. 58, at 20. At that meeting, Plaintiff provided multiple photographs of Sergeant Staten's squad car in front of his residence, news articles of unrelated time fraud incidents, and language from Village of Barboursville's policies and state regulations. *Def.'s Ex. A*, ECF No. 58, at 3–18. Plaintiff asserts that he began gathering evidence around June of 2022 because his superior, Village of Barboursville Police Department Lieutenant Wendell Adkins, requested he do so, and eventually requested his report of Sergeant Staten's "stealing time . . . going home without permission." *Simmons Dep.* 42:10–12, 43:6–21, 47:1–3, ECF No. 63–1, at 19–21. At this point and throughout all facts at issue, Plaintiff was away from work due to a work-related injury.

The allegations and accompanying documentation provided to Ms. Connelly were reported to the Cabell County Prosecuting Attorney's Office and assigned to Prosecutor Sean Hammers.[3]

Throughout January of 2023, Plaintiff requested multiple progress updates from Ms. Connelly and made open records requests for information surrounding the investigation into Sergeant

---

[2] Plaintiff originally included a cause of action for wrongful termination under West Virginia common law that has since been dismissed. *See Simmons v. Village of Barboursville*, No. 3:24-0078, 2024 WL 3445493 (S.D. W. Va. July 17, 2024).

[3] Although the exact date of the referral to Prosecutor Hammers is unclear, a February 7, 2023 letter from Defendant's outside counsel to Plaintiff notes that Plaintiff's report and accompanying documents were referred to the prosecutor's office. *Def's Ex.*, Letter from Attorney Hoyt Glazer to Pl. (Feb. 7, 2023), ECF No. 58, at 40–41. *See also Def.'s Ex. E,* E-mail from Lacey Connelly to Pl. (Jan. 23, 2023, at 4:19 PM ET), ECF No. 58, at 27; *Def.'s Ex. T,* Letter from Prosecuting Attorney Sean K. Hammers to Mayor Chris Tatum (Apr. 4, 2023), ECF No. 58, at 56.

Staten.[4] Plaintiff was notified by both Ms. Connelly and Defendant, through outside counsel, that the allegations were reported to the Cabell County Prosecutor's Office but that all other information in an ongoing investigation was confidential. *Def.'s Ex. E*, E-mail from Lacey Connelly to Pl. (Jan. 23, 2023, at 4:19 PM), ECF No. 58, at 27; *Def's Ex.*, Letter from Attorney Hoyt Glazer to Pl. (Feb. 7, 2023), ECF No. 58, at 40–41; *Def.'s Ex. O*, Letter from Attorney Abraham Saad to Pl. (Mar. 2, 2023), ECF No. 58, at 47–48.

On February 1, 2023, Defendant sent Plaintiff a "Letter of Counseling" that informed Plaintiff he had violated "chain of command" and several other policies by his continued investigation and "patterns of harassment" towards Ms. Connelly. *Def.'s Ex.*, Letter from Mayor Chris Tatum and Chief Daren McNeil to Pl. (Feb. 1, 2023), ECF No. 58, at 36–39.

Following a series of additional undisputed communications from Plaintiff to various recipients, including elected officials, Defendant sent Plaintiff another letter demanding Plaintiff refrain from contacting Ms. Connelly about allegations against Sergeant Staten, as the matter was turned over to the Cabell County Prosecutor's Office. *Def.'s Ex. O*, Letter from Attorney Abraham Saad to Pl. (Mar. 2, 2023), at 48. Additionally, the letter noted Plaintiff was under review for insubordinate conduct by making defamatory statements toward Village of Barboursville Mayor Chris Tatum, Police Chief Daren McNeil, and Ms. Connelly. *Id.*

By letter dated April 4, 2023, Prosecutor Hammers notified Mayor Tatum that, after reviewing the allegation against Sergeant Staten, and accompanying documents, he could not find "any

---

[4] *See Def.'s Ex. B*, Open Records Request from Pl. to Village of Barboursville (Jan. 12, 2023), ECF No. 58, at 19; *Def.'s Ex. C*, E-mail from Pl. to Lacey Connelly (Jan. 17, 2023), ECF No. 58, at 20; *Def.'s Ex. D*, E-mail from Pl. to Lacey Connelly (Jan. 18, 2023), ECF No. 58, at 26; *Def.'s Ex. E*, E-mail from Pl. to Lacey Connelly (Jan. 23, 2023, at 7:59 PM), ECF No. 58, at 27.

provable criminal offenses of fraud or misappropriation of funds." *Def.'s Ex. T,* Letter from Prosecuting Attorney Sean K. Hammers to Mayor Chris Tatum (Apr. 4, 2023), ECF No. 58, at 56.

Less than two weeks later, another warning letter was sent to Plaintiff in response to Plaintiff's conduct on social media and "weekly letters/emails to various individuals, local elected officials, and local media claiming that someone needed to look into the matter because the Village of Barboursville was not." *Def.'s Ex.*, Letter from Attorney Abraham Saad to Pl. (Apr. 14, 2023), ECF No. 58, at 57–58. In that same letter, Defendant's outside counsel, again, notified Plaintiff that his behavior was under review. *Id.*

Mayor Tatum requested that the Huntington Police Department review Plaintiff's conduct. *Def.'s Ex. V*, HPD Professional Standards Review (July 13, 2023), ECF No. 58, at 59. In result, Sergeant Ted Backus (Detective Backus) of the Huntington Police Department recommended Plaintiff's termination for multiple violations of the Village of Barboursville's policies.[5] Detective Backus noted Plaintiff was "creating a hostile work environment by beginning an unauthorized investigation into his supervisor, harassing the same supervisor by making multiple trips to . . . [his] personal residence," and engaging in intimidating and threatening behavior that would impact his ability to carry out his job. *Id.* at 60–61.

---

[5] Detective Backus found Plaintiff violated: BPD Obedience of Orders 30.01 Article 7 (policy against members publicly criticizing the City, Police Department or its policies and against making any written or oral statements which lend to bring them into disrepute or ridicule) and Article 8 (policy requiring members with grievances against other officers to direct concerns through appropriate channels to the Chief of Police); BPD Limitations of Authority 30.03 Article 6 (policy requiring official business to remain confidential) and Article 10 (policy against engaging in policing outside of city limits); and BPD Integrity 30.04 Article 5 (policy against malicious and unsavory arguments with members of the Department). *Def.'s Ex. V*, HPD Professional Standards Review (July 13, 2023), ECF No. 58, at 59–62.

## II. STANDARD OF REVIEW

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Id.* at 249. Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor[.]" *Anderson*, 477 U.S. at 256.

Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III. ANALYSIS

The Court examines whether there are genuine issues of material fact as to Plaintiff's claim that Defendant violated the West Virginia Whistle-blower Law. The Court considers the prima facie elements and the burden-shifting paradigm of the Whistle-blower Law in turn.

### A. Prima Facie Whistle-blower Law Claim

The West Virginia Whistle-blower Law provides that:

> No employer may discharge, threaten, or otherwise discriminate or retaliate against an employee by changing the employee's compensation, terms, conditions, location, or privileges of employment because the employee, acting on his or her own volition, or a person acting on behalf of or under the direction of the employee, makes a good faith report . . . to the employer or appropriate authority, an instance of wrongdoing or waste.

W. Va. Code § 6C–1–3(a). "[T]he showing the plaintiff must make as to the elements of the *prima facie* case [of retaliation or discrimination] in order to defeat a motion for summary judgment is *de minimis*." Syl. Pt. 4, in part, *Hanlon v. Chambers*, 464 S.E.2d 741, 745 (W. Va. 1995).

Plaintiff was an employee of the Village of Barboursville, and at some point following a report to his employer, he was terminated. *Def.'s Mot. for Summ. J.* 2–3, ECF No. 57; *Pl.'s Resp. to Def.'s Mot. for Summ. J.* 6, ECF No. 63. Plaintiff's report alleged time fraud of another officer which satisfies the statutory definition of "wrongdoing" or "waste," as it would be a violation that is not technical or minimal in nature. W. Va. Code § 6C–1–2(h). While Defendant initially argues no wrongdoing or waste was ultimately found,[6] that is not relevant to the preliminary determination. The report must be reasonable, but need not be proven to be true, to satisfy this element, "nothing in our Whistle-blower Law requires an employee to have been ultimately correct in his or her assessment of the wrongdoing or waste." *Longerbeam v. Shepherd Univ.*, No. 22–690, No. 22–610, 2024 WL 1571403, at *11 (W. Va. Apr. 11, 2024) (citing *Taylor v. W. Va. Dep't of Health & Hum. Res.*, 788 S.E.2d 295, 308 n. 21 (W. Va. 2016)).

Next, the Court considers whether there is a dispute as to the material fact of a good faith report. A good faith report is defined by statute as one "made without malice or consideration of

---

[6] *Def.'s Mot. for Summ. J.* 2, 17.

personal benefit and which the person making the report has reasonable cause to believe is true." W. Va. Code § 6C–1–2(d). Defendant states that its motion does not argue "one way or another as to whether the Plaintiff had a good faith basis for reporting his suspicions of waste and/or wrongdoing," however, Defendant also claims Plaintiff was motivated to investigate and file a report against Sergeant Staten based on "personal dislike." *Def's Reply* 4, ECF No. 64; *Def.'s Mot. for Summ. J.* 14. That supervisors were already aware of the wrongdoing or waste does not negate that a report was made in good faith. *See Longerbeam*, 2024 WL 1571403, at *11.

While malicious intent would undermine a good faith report, Defendant provides weak evidence to argue the true motivation was personal: "because Sgt. Staten didn't speak to him when they ran into each other at a doctor's appointment." *Def.'s Mot. for Summ. J.* 14. Defendant also argues that Plaintiff was on leave, so he could not have had firsthand knowledge of "operations of the department." *Id.* at 3, 14. In response, Plaintiff argues that Sergeant Staten's misconduct was a matter of common knowledge. *Pl.'s Resp. to Def.'s Mot. for Summ. J.* 6; *Adkins Dep.* 31:4–19, ECF No. 63–1, at 4; *Wilson Dep.* 9:5–24, 10:1–18, ECF No. 63–1, at 27–28. Plaintiff himself took the photographs of what he believed to be Sergeant Staten committing time fraud. *Pl.'s Resp. to Def.'s Mot. for Summ. J.* 7; *Adkins Dep.* 47:9–48:22, ECF No. 63–1, at 5–6. Plaintiff did so, he claims, at the direction of and with information provided by Lieutenant Adkins. *Pl.'s Resp. to Def.'s Mot. for Summ. J.* 2, 7; *Adkins Dep.* 47:9–48:22. Plaintiff's belief of misconduct was both firsthand and reasonable. Thus, Plaintiff has provided evidence to support a finding that he made a good faith report. The Court now turns to evaluate the evidence provided surrounding Plaintiff's subsequent conduct which, if undisputed, may serve as a dispositive defense at this stage.

## B. *McDonnell Douglas* Burden-Shifting

Defendant requests the Court grant summary judgment, arguing Plaintiff cannot provide adequate evidence to show Defendant's reasoning for terminating Plaintiff was merely pretext. *Def.'s Mot. for Summ. J.* 17. The Whistle-blower Law provides: "it shall be a defense . . . if the defendant proves by a preponderance of the evidence that the action complained of occurred for separate and legitimate reasons, which are not merely pretexts." W. Va. Code § 6C–1–4(c).

The West Virginia Whistle-blower claim is subject to the *McDonnell Douglas* burden-shifting framework first adopted by the United States Supreme Court in a Title VII context. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1983). *See Taylor v. W. Va. Dep't of Health & Hum. Res.*, 788 S.E.2d 297, 307 (W. Va. 2016) (applying the *McDonnell Douglas* framework to a West Virginia Whistle-blower Law claim) (citing *Shepherdstown VFD v. W. Va. Human Rights Comm'n*, 309 S.E.2d 342, 353 (W. Va. 1983)). Under this framework, after the plaintiff makes a prima facie showing of retaliation, the burden shifts to the defendant to articulate a "legitimate and nondiscriminatory reason for [the employee's] rejection." *Shepherdstown VFD*, 309 S.E.2d at 353. If the defendant articulates such reasoning to rebut the presumption of discrimination or retaliation, "the complainant has the opportunity to prove by a preponderance of the evidence that the reasons offered by the respondent were merely a pretext for the unlawful discrimination." *Id.* at 352.

Here, Defendant claims the legitimate and nonretaliatory reason for termination was "the recommendation of Detective Backus who investigated Plaintiff's actions while off on medical leave." *Def.'s Reply* 3. Huntington Police Department's Detective Backus concluded Plaintiff violated Village of Barboursville policies by publicly criticizing the Department; engaging in threatening and intimidating behavior; divulging confidential business; engaging in law enforcement activities outside of city limits; and by maliciously communicating with other

members of the Department. *Def.'s Ex. V*, HPD Professional Standards Review (July 13, 2023), ECF No. 58, at 60–61. Detective Backus noted Plaintiff's conduct could interfere with his ability to successfully perform duties of the job and recommended his termination. *Id.* at 62. Defendant notes that the termination did not occur until after Prosecutor Hammers finished his report on Sergeant Staten and until after Detective Backus' independent investigation into Plaintiff's conduct. *Def.'s Reply* 3. With this reasoning, Defendant has met the "burden of production," and Plaintiff continues to hold the ultimate burden. *Skaggs v. Elk Run Coal Co., Inc.*, 479 S.E.2d 561, 583 (W. Va. 1996).

To reach the jury, "the employee must offer sufficient evidence that the employer's explanation was pretextual to create an issue of fact." *Id*. Plaintiff must point to some direct or circumstantial evidence to show Defendant's reasons are pretextual. *Id.* at 587. Pretext means "the explanation offered by the defendant was not the reason that actually motivated the action taken against the plaintiff." *Id.* at 584.

There are many ways for an employee to show an employer's provided reasoning was pretextual. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147–49 (2000). This Court, as well as others, have found that factors relevant to demonstrating pretext may include temporal proximity between the report and termination, inconsistencies in a defendant's reasoning, and similarity in decisionmakers at the time of the report and termination. *See Massaro v. Fairfax Cnty.*, 95 F.4th 895, 902 (4th Cir. 2024); *Roe v. Marshall Univ. Bd. of Governors*, 145 F.4th 561, 570 (4th Cir. 2025); *E.E.O.C. v. Sears Roebuck and Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001); *Adkins v. CSX Transp., Inc.*, 70 F.4th 785, 793–94 (4th Cir. 2023). While Plaintiff did not assert pretext based on any of the above factors, Defendant notes termination of Plaintiff occurred six months after the initial report and was based on an independent investigation of Plaintiff's conduct.

*Def.'s Reply* 3. Plaintiff also had the opportunity to conform his conduct after being warned by Defendant. *Def.'s Ex.*, Letter from Mayor Chris Tatum and Chief Daren McNeil to Pl. (Feb. 1, 2023), ECF No. 58, at 36–39.

While Plaintiff claims direct evidence of retaliation was established by Defendant "admit[ting] it terminated [Plaintiff] because he continued to Blow the Whistle,"[7] Plaintiff has directly opposed this assertion.[8] Plaintiff was not terminated when he made his report or because he did so; he was fired months later for the manner in which he persisted to violate Village of Barboursville's policies.

A plaintiff may also provide evidence of pretext by eliminating a defendant's proffered reasoning for the termination. *Longerbeam*, 2024 WL 1571403, at *13 (citing *Conaway v. Eastern Assoc. Coal Corp.*, 358 S.E.2d 423 (W. Va. 1986)). Here, Plaintiff is not disputing his post-report misconduct that violated policy, so he cannot eliminate the reasoning behind the termination that was provided by Defendant. Instead, Plaintiff attempts to justify his actions arguing he "had to go outside the department because the department was taking care of its good old boys and sweeping the evidence under the rug." *Pl.'s Resp. to Def.'s Mot. for Summ. J.* 5.

Plaintiff largely relies on evidence supporting his time fraud allegation and does not undermine the reasoning for termination provided by Defendant. Plaintiff argues, "[p]erhaps if the prosecutor had spoken to Plaintiff and received the evidence Plaintiff presented to his superiors, a prosecution might have resulted."[9] Defendant's stated reasoning for termination was not Sergeant Staten's

---

[7] *Pl.'s Reply Mem. Regarding Officer Backus' Investigation* 1, ECF No. 87.
[8] *Def.'s Reply* 3 ("This is not accurate, The VOB terminated Plaintiff approximately six months (6) after he complained about Sgt. Staten and only after the Prosecutor's Office issued its report and Detective Backus investigated Plaintiff's conduct after making his report of alleged wrongdoing.").
[9] *Pl.'s Resp. to Def.'s Mot. for Summ. J.* 4. The evidence in the record suggests Prosecutor Hammers was provided the documents that Plaintiff presented when he reported Sergeant Staten.

innocence. While Plaintiff questions the investigation into Sergeant Staten and provides deposition testimony surrounding allegations of Sergeant Staten's time fraud, the truth of the underlying report is not dispositive in analyzing if the reasoning provided by Defendant was pretextual. *See Longerbeam,* 2024 WL 1571403, at *14.

Plaintiff also refers to West Virginia Code § 8–9–4 which states:

> (a) Whenever a governing body of a municipality . . . obtains information that an employee . . . may have misappropriated funds, engaged in fraud, or otherwise violated a law relating to the public trust, municipality, or any of a municipality's board, committee, or any other entity authorized in this chapter shall timely report such information or allegation in writing to the county prosecutor's office.
> (b) The reporting of such information under subsection (a) of this section shall not prevent, relieve or replace a report to a law-enforcement agency, if appropriate or warranted.

W. Va. Code § 8–9–4.

Plaintiff relies on section (b), claiming, "failure to report to the West Virginia State Police is the basis of Plaintiff's continued pursuit of the wrongdoing." *Pl.'s Resp. to Def.'s Mot. for Summ. J.* 4. Defendant relies on West Virginia Code § 8–9–4(a), claiming it fulfilled any duty owed by reporting the allegation to the county prosecutor's office. *Def.'s Mot. for Summ. J.* 16. Additionally, Defendant notes Plaintiff "could have also made his report of alleged wrongdoing and waste to the WVSP, but he did not." *Def.'s Reply* 4. Still, this argument does not create a dispute as to Defendant's reasoning for termination. Plaintiff's undisputed conduct violated department policy and went beyond "a report to a law-enforcement agency, if appropriate or warranted." W. Va. Code § 8–9–4(b).

---

*See Def.'s Ex. T*, Letter from Prosecuting Attorney Sean K. Hammers to Mayor Chris Tatum (Apr. 4, 2023), ECF No. 58, at 56; *Def's Ex.*, Letter from Attorney Hoyt Glazer to Pl. (Feb. 7, 2023), ECF No. 58, at 40–41.

Plaintiff did not make any argument as to the validity of Huntington Police Department Detective Backus' report on Plaintiff's conduct until the pretrial conference held on August 25, 2025. Plaintiff criticizes Detective Backus for a lack of thoroughness and impartiality. Plaintiff argues that Detective Backus failed to consider Plaintiff's personnel file and performance reviews in making his recommendation, but Detective Backus' investigation focused on post-report conduct,[10] so that information was not relevant. Defendant also counters that "Detective Backus gave Plaintiff the opportunity to be interviewed with counsel present, which he declined to do." *Def.'s Reply* 4. Detective Backus relied on objective, undisputed facts concerning Plaintiff's post-report conduct and Defendant reasonably relied on Detective Backus' findings.

At the pretrial conference, when asked for the evidentiary basis to support an assertion that the decision to terminate, based on the independent investigation, was pretextual, Plaintiff referenced deposition testimony that had not yet been provided to the Court. *See Pl.'s Citations Regarding Officer Backus' Investigation*, ECF No. 85. Upon review, the Court finds that, while Detective Backus noted he had not done an investigation like this before, he was positioned as an Internal Affairs Investigator with the Huntington Police Department and had experience investigating conduct within his own department. *Backus Dep.* 10:1–22, 14:14–15:23, ECF No. 85–1, at 3–4. Nothing in the record suggests Detective Backus was underqualified or engaging in a cover-up.

To the contrary, Detective Backus specifically references facts underlying the policy violations informing his recommendation that the Village of Barboursville terminate Plaintiff. These include: "correspondence to outside individuals from the Department . . . show[ing] the Department in a bad light"; engaging in an "unauthorized investigation that didn't rise out of the Office of the

---

[10] *Pl.'s Reply Mem. Regarding Officer Backus' Investigation* 3; *Backus Dep.* 76:20–22, ECF No. 85–1, at 20.

Chief" as required and improperly doing so while on leave; "correspondence to . . . citizens of Barboursville, the City Council, and/or the Representatives of the State"; engaging in law enforcement outside of city limits by surveilling Sergeant Staten in Ohio; and the continuing investigation, documentation, and following of Sergeant Staten. *Id.* at 57:5–21; 58:20–23; 59:2–11; 60:2–9, ECF No. 85–1, at 15–16. While Plaintiff challenges Detective Backus' finding that Plaintiff involved others in his unauthorized investigation,[11] that alone would not undermine the other undisputed, violative conduct that supported Detective Backus' recommendation and resulted in Plaintiff's termination. Additionally, the evidence in the record only undermines Plaintiff's unsupported claim that the chiefs of the police departments and Detective Backus schemed to accomplish a "wink" and "nod" investigation. *Pl.'s Reply Mem. Regarding Officer Backus' Investigation* 2, 4. Plaintiff has not provided evidence to suggest Defendant's reliance on Detective Backus' report, or that the report itself, was pretextual.

The provided evidence is not sufficient for a reasonable factfinder to conclude that Defendant's separate and nonretaliatory reasoning for terminating Plaintiff – that he violated multiple policies of the Village of Barboursville – was false, or that the real reason was retaliation for the initial complaint against Sergeant Staten. After all, Plaintiff's termination was months after the report, after attempts to get Defendant to conform his conduct to the Village of Barboursville Police Department's policy, and the decision was informed by an independent investigation into Plaintiff's conduct. In review of the facts in the light most favorable to Plaintiff, genuine issues of material fact do not exist surrounding the third step of the *McDonnell Douglas* burden-shifting framework.

The Court makes this determination with full awareness of the cautions against making

---

[11] *Id.* at 35:2–22, ECF No. 85–1, at 9.

resolutions of disputed factual issues in granting summary judgment under the *McDonnell Douglas* framework. *See Taylor,* 788 S.E.2d at 310. However, when a plaintiff fails to provide reliable evidence to allow a reasonable factfinder to conclude the stated reasoning for termination was pretextual, the material issue is not in dispute and the outcome is warranted.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment. ECF No. 56. Plaintiff's remaining claim is **DISMISSED.**

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to all counsel of record and any unrepresented parties.

ENTER:   September 8, 2025

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE